UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DANNY L. SAINTIGNON, JR.,           )
                                    )
                 Plaintiff,         )
                                    )
          v.                        )    No. 2:24-cv-00027-JPH-MJD
                                    )
YARBER Lt.,                         )
IVY Sgt.,                           )
                                    )
                 Defendants.        )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
GRANTING MOTION TO STRIKE, GRANTING MOTION FOR DECISION AND
DENYING MOTION TO COMPEL**

This cause of action is pending on Plaintiff Danny L. Saintignon, Jr.'s claim that Defendants Lt. Yarber and Sgt. Ivy were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. *See* Dkt. 8 at 3 (Screening Order). Lt. Yarber and Sgt. Ivy have moved for summary judgment. Dkt. [46]. For the reasons below, that motion is **GRANTED**.

### I. MOTION FOR DECISION AND MOTION TO COMPEL

Mr. Saintignon filed a motion asking the Court to issue a decision on the pending motion for summary judgment, dkt. [67], and a motion to compel a response to the motion for a decision, dkt. [72]. Because this order resolves the motion for summary judgment, those motions are **granted**.

### II. MOTION TO STRIKE

Lt. Yarber and Sgt. Ivy filed a motion to strike Mr. Saintignon's surreply. Dkt. 63. Southern District of Indiana Local Rule 56-1(d) permits surreplies only when movants cite new evidence in their reply briefs or object to the admissibility

1

of evidence in a response brief. Any such surreply "must be limited to the new evidence and objections." S.D. Ind. L.R. 56-1(d). Lt. Yarber and Sgt. Ivy argue that while Mr. Saintignon could have filed a surreply limited to their objections to evidence he submitted in his response brief, he did not address those evidentiary objections and instead raised arguments outside the scope permitted by the local rule. Dkt. 63 at 2.

Because Mr. Saintignon's surreply is not limited to new evidence and objections, the motion to strike is **granted** and the Court does not consider the surreply. Dkt. [63].

### III. MOTION FOR SUMMARY JUDGMENT

**A.    Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

2

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## B.     Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Saintignon and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

Mr. Saintignon was incarcerated in cell 409 of the A East 400 range, a segregation unit of the Wabash Valley Correctional Facility ("Wabash"). Dkt. 52-1 at 23. *Id.* Sgt. Ivy was a correctional sergeant at Wabash. Dkt. 47-2 ¶ 1. Lt. Yarber was a correctional lieutenant at Wabash. Dkt. 47-3 ¶ 3.

Mr. Saintignon tested positive for COVID in December 2020 and has had breathing issues since that time, for which he has been prescribed inhalers to use as needed, which is "[p]robably at least once a day." Dkt. 47-1 at 14–16. He had his inhaler with him during the events at issue. *Id.* at 16.

3

On July 14, 2023, incarcerated individuals in the A East 400 range were "banging and making a lot of noise" because they were not getting recreation time that day, but Mr. Saintignon had nothing to do with it. Dkt. 52-1 at 23.

Sgt. Ivy came on the range, yelling that the inmates needed to "shut the fuck up or he would cell extract" the entire range. *Id.* He started cell extraction at cell 402 with inmate Jonah Henderson. *Id.* at 23, 30. Cell 402 was on the floor below Cell 409 and two cells over. Dkt. 47-1 at 23–24. Sgt. Ivy used a "fogger" a couple of times with 2-3 second bursts of "pepper spray"—Oleoresin Capsicum. Dkt. 52-1 at 23, 27; dkt. 47-3 ¶ 8.

After the first burst, the entire range was "engulfed" with the chemical. Dkt. 52-1 at 23–24. The cell doors are not solid but have numerous small holes in a grid-like pattern that allowed the chemical to enter Mr. Santignon's cell "as though [he] was directly hit with the spray as well." *Id.* at 24. Mr. Santignon was coughing and choking, felt like he was being smothered, vomited, and scratched his skin to the point of bleeding. *Id.* He was in a great deal of pain. *Id.* He told Sgt. Ivy that he had lingering effects from COVID and needed fresh air due to his difficulty breathing, to which Sgt. Ivy responded "deal with it Saintignon, you are the one who started all this bullshit." *Id.*

Sgt. Ivy then sprayed cell 402 again. *Id.* He then used a pepperball gun to shoot at least 20 pepperball rounds into the cell. *Id.* Mr. Saintignon told Sgt. Ivy that he uses an inhaler for his COVID side effects and that he couldn't breathe, and he asked to see medical. *Id.* Sgt. Ivy told him "I don't give a fuck," and "you

get what you deserve." *Id.* at 24, 28. Mr. Saintignon asked for a decontamination shower, which Sgt. Ivy refused. *Id.* at 25.

Lt. Yarber was present for some of the above exchanges, and Mr. Saintignon got Lt. Yarber's attention, explained that he could not breathe, and asked for medical and a decontamination shower. *Id.* Mr. Saintignon explained his COVID side effects to Lt. Yarber. *Id.* at 27–28. Lt. Yarber said "who gives a shit," threatened to cell extract the rest of the range, and blamed Mr. Saintignon for the actions of others. *Id.* at 25. Lt. Yarber said "nobody is seeing medical." *Id.* at 31.

Later, Mr. Saintignon again told Sgt. Ivy and Lt. Yarber that he could not breathe due to the "excess amounts" of chemical agents in the air and coming through the air vents and requested to see medical or to receive a decontamination shower. *Id.* at 25. Sgt. Ivy and Lt. Yarber refused. *Id.* After the cell extraction, Mr. Saintignon again asked Sgt. Ivy for a decontamination shower, which was refused.[1] Dkt. 52-1 at 28.

The air was "heavily mixed with the chemical agents" for at least three hours. *Id.* at 27. Other people on the range, even those without breathing problems, experienced uncontrollable coughing, choking, shortness of breath, tearing up, and burning sensations on skin, eyes, lungs, and throat. *Id.* at 27, 32.

---

[1] Sgt. Ivy contests this, but the Court considers the designated evidence in the light most favorable to Mr. Saintignon.

Mr. Saintignon put in a medical slip and was seen three to four days later, which was around the time when he began to feel better. *Id.* at 25. Neither Sgt. Ivy nor Lt. Yarber cleaned or decontaminated cell 402. *Id.* The chemicals lingered in A East 400 range until late on July 18, 2024. *Id.* The humidity in the air mixed with the lingering chemical "is not a pleasant mixture," and the humidity "reactivates" the chemical. *Id.* at 26, 28. Mr. Saintignon had four days and nights of "difficulty breathing[,] again feeling as if I'm drowning and/or being smothered, on top of scratching my body until I bleed." *Id.* at 26. His inhaler relieved some of the lung pain, but he was in pain for four days before his lungs began to feel better. Dkt. 52 at 9.

Neither Sgt. Ivy nor Lt. Yarber were involved in the decontamination process of cell 402. Dkt. 47-2 ¶ 49, dkt. 47-3 ¶ 33. Decontamination procedures can only begin once the situation requiring use of pepper spray is under control. Dkt. 47-3 ¶ 14. Lt. Yarber left the range before the cell extraction team arrived. *Id.* ¶ 25. He is generally not involved in the decontamination process as a correctional lieutenant. *Id.* ¶ 32. When Sgt. Ivy was completing his paperwork, he told the night shift sergeant that cell 402 still needed to be decontaminated and was told it would be taken care of. Dkt. 47-2 ¶ 49.

The air handler remained on during the events and was blowing the air and pepper spray into every cell.[2] Dkt. 52 at 5. The exterior door on the range was opened to circulate fresh, outside air. Dkt. 47-3 ¶ 21.

---

[2] Sgt. Ivy and Lt. Yarber contest this, but the Court considers the designated evidence in the light most favorable to Mr. Saintignon.

During the relevant events, Sgt. Ivy and Lt. Yarber never came to Mr. Santignon's cell, but they both answered questions from him and addressed him by name. Dkt. 52 at 8.

### C.    Discussion

Mr. Saintignon's only claim is whether Sgt. Ivy and Lt. Yarber were deliberately indifferent to his serious medical need in violation of the Eighth Amendment.[3] *See* dkts. 8, 65.

Additionally, to the extent that Mr. Saintignon bases his claim on the timing of cell 402's decontamination, there is no designated evidence that Sgt. Ivy or Lt. Yarber were personally involved in that timing. *See* dkt. 47-2 ¶ 49, dkt. 47-3 ¶ 33. After Sgt. Ivy informed the night shift sergeant that the cell needed to be decontaminated, Sgt. Ivy "was told it would be taken care of," so the multiple-day delay in the cell's decontamination is not attributable to Sgt. Ivy or Lt. Yarber for § 1983's purposes. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))).

Mr. Saintignon's Eighth Amendment medical care claim is therefore cabined to Sgt. Ivy's and Lt. Yarber's refusals to take Mr. Saintignon to medical or give him a decontamination shower on July 14, 2023.

---

[3] When the Court screened Mr. Saintignon's complaint under 28 U.S.C. § 1915A, the Court provided him an opportunity to identify other claims that he believed he alleged in his complaint. *See* dkt. 8. Mr. Saintignon did not identify any other claim before his deadline to do so expired.

7

Sgt. Ivy and Lt. Yarber argue that they did not violate Mr. Saintignon's Eighth Amendment rights by refusing medical attention or a shower and, alternatively, that they are protected by qualified immunity. Dkt. 48 at 18–27.

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "Whether qualified immunity applies turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)). Once the defense is raised, the burden is on the plaintiff to defeat it. *Id.* (citing *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2018)). The Court may take up either question first. *Id.* (citing *Jones v. Clark*, 630 F.3d 677, 682 (7th Cir. 2011)).

This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641).

While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Here, Mr. Saintignon has not met his burden to show that the right at issue was clearly established. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429

9

U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). Sgt. Ivy and Lt. Yarber assert that they are entitled to qualified immunity because it was not clearly established that their actions violated the Constitution. In their brief in support of summary judgment, they identify cases where the effects of air-borne irritants on inmates with lung issues were held to not be serious medical conditions.

In *Oliver v. Deen*, the Seventh Circuit concluded that aggravation of asthma from second-hand smoke exposure, including chest pains, difficulty breathing, dizziness, and nausea, did not demonstrate a serious medical need for a non-smoking environment. 77 F.3d 156, 158–61 (7th Cir. 1996). The Court affirmed that decision on similar facts in *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) ("[T]he injuries of which Henderson complains—breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are, objectively speaking, relatively minor. While we do not doubt that these ailments caused him some distress and discomfort, they are not the sort of objectively serious injury or medical need that amounts to a denial of the minimal civilized measure of life's necessities necessary to state a [constitutional]

10

violation." (quotation marks, citations omitted)).

Several district courts within the Seventh Circuit have taken similar approaches. In *Trotter v. Kingston*, the Eastern District of Wisconsin found that the plaintiff's asthmatic attacks with shortness of breath, difficulty in breathing, nausea, and tightness in the chest after being exposed to pepper spray that was directed toward other inmates was "not sufficiently serious to be constitutionally actionable" even though he was denied a decontamination shower. No. 05-C-1032, 2007 WL 984089, at *2, *6 (E.D. Wis. Mar. 27, 2007). In *Kadamovas v. Caraway*, this district found that no reasonable jury would find that the plaintiff's asthma and breathing problems were an objectively serious medical need despite evidence of "breathing problems, diarrhea, vomiting, crying, sneezing, psychological anguish, headache, fear of death, high blood pressure, accelerated heartbeat, respiratory stress, wheezing, chest pains, and excessive sweating" from exposure to pepper spray and smoke fumes. No. 2:17-cv-00050-WTL-MJD, 2018 WL 6415588, *7 (S.D. Ind. Dec. 6, 2018), *aff'd*, 775 F. App'x 242 (7th Cir. 2019).[4]

In his response in opposition to summary judgment, Mr. Saintignon does not address qualified immunity at all. *See* dkt. 52; *Villalobos v. Picicco*, 168 F.4th 1057, 1062 (7th Cir. 2026) ("Importantly, the plaintiff bears the burden of proving the law is clearly established—not the defendant."). And he does not cite any binding precedent about medical care after exposure to lung irritants. *See*

---

[4] In affirming, the Seventh Circuit assumed for purposes of the decision that a serious medical need existed.

dkt. 52. But meeting the burden to overcome qualified immunity "is a 'do or die' requirement for the plaintiff's suit. If a plaintiff fails to identify analogous precedent clearly establishing the law, the district court must grant summary judgment for the defendant." *Villalobos,* 168 F.4th at 1063; *accord Thomas v. Carmichael,* 164 F.4th 1058, 1067 (7th Cir. 2026). Instead, Mr. Saintignon identifies a decontamination policy that he believes was not followed, but a violation of policy by itself is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett,* 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003)). As Mr. Saintignon bears the burden to show why qualified immunity does not apply and he has failed to do so, the Court finds that Sgt. Ivy and Lt. Yarber are entitled to qualified immunity.[5]

---

[5] Also, this Court issued an order on summary judgment a few months ago regarding this same use-of-force incident and likewise found that Sgt. Ivy and Lt. Yarber were protected by qualified immunity for the deliberate indifference claims brought against them in that case. *See Coy v. Yarber,* No. 1:23-cv-1920-JPH-KMB, 2025 WL 2782829, at *4 (S.D. Ind. Sept. 30, 2025). There, plaintiff produced evidence that he experienced coughing, choking, shortness of breath, chest burning, tearing up, dizziness, and lightheadedness and had a history of heart palpitations. *Id.* at *2. The Court granted summary judgment in favor of the defendants on the constitutional violation prong of the qualified immunity analysis, noting that "whether the effects of pepper spray rise to the level of deliberate indifference is a fact-intensive injury" and determined that the plaintiff had "not proven that his exposure rose to the level of objective seriousness." *Id.* at *4 (citing *McCloud v. Vanschoyck,* No. 2:21-cv-0049-JPH-MKK, 2024 WL 229740, at *7 (S.D. Ind. Jan. 19, 2024).

12

## IV. CONCLUSION

The Court **GRANTS** the motions to issue a decision and to compel a response. Dkt. [67]; dkt. [72]. The Court **GRANTS** the motion to strike surreply, dkt. [63], and did not consider the surreply, dkt. 61.

Defendants' motion for summary judgment is **GRANTED**. Dkt. [46].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/31/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DANNY L. SAINTIGNON, JR.
978030
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Allison Mauk
Office of Indiana Attorney General
allison.mauk@atg.in.gov